UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ASF, INC.,

                    Plaintiff,

          v.

CITY OF SEATTLE,

                    Defendant.

CASE NO. C05-903JLR

ORDER

## I.   INTRODUCTION

This matter comes before the court on Plaintiff's Motion for Partial Summary Judgment (Dkt. # 7).  Having read the papers filed in connection with this motion, and having heard oral argument, the court GRANTS Plaintiff's motion.

## II.   BACKGROUND

Plaintiff ASF, Inc. ("ASF") filed suit against Defendant City of Seattle ("City") when it denied ASF's application for an adult entertainment license ("adult entertainment license") and extended a 17-year moratorium on issuing such licenses.  Although ASF initiated this action only a few months ago, ASF now moves for summary judgment seeking (1) a declaration that the moratorium is unconstitutional on its face, and (2) an injunction preventing the City from enforcing the moratorium and ordering the City to

ORDER – 1

issue ASF an adult entertainment license (upon submitting an appropriate application). The City opposes summary judgment, arguing that ASF lacks standing to pursue this action and that the moratorium is constitutional.

Intending to operate an adult cabaret with live erotic dancers, ASF applied for an adult entertainment license from the City's Office of Revenue and Consumer Affairs on March 12, 2004. ASF's President, Robert Davis, applied for a general business license, but failed to apply for the special regulatory license which is also required.[1] According to Davis, the clerk at the application desk referenced the moratorium on adult entertainment licenses and advised him to use the standard business application form and note his intention to apply for an adult entertainment license.[2] Davis followed the clerk's directions and indicated that he intended to operate "Club Shandri La" in downtown Seattle, at 1921 Fifth Avenue, a few blocks away from another adult cabaret, Deja Vu. Three weeks later, Davis received a letter from the City denying his license application in light of the moratorium and advising him to resubmit "the applicable regulatory license, background documentation, and applicable fees" once "the moratorium . . . is lifted."

---

[1]To obtain an adult entertainment license under the current regulations, an applicant must apply for a special regulatory license, in addition to a general business license. Schriner Decl. at ¶ 3; Seattle Municipal Code ("SMC") § 6.270.040. The application form for an "adult entertainment premises" license requires the applicant to provide a variety of information not required by the standard business license application, including the applicant's criminal history and that of the corporation's officers, directors, managers, and supervisors. Schriner Decl., Exh. A. Further, to operate an adult cabaret with live erotic dancing, the applicant must possess a "master use permit" for a "performing arts theater." McKim Decl. at ¶¶ 3, 5-7. Thus, the applicant must comply with both licensing and zoning requirements, as well as general health and building code requirements. SMC § 6.270.090.

[2]In her declaration, the director who issues adult entertainment licenses states that she tells applicants that she "cannot process their applications until the moratorium on land use permits is lifted." Schriner Decl. at ¶ 5. Indeed, the City has not even updated the application form for an adult entertainment license in at least five years, as evidenced by the incorrect century and mayor listed on the form. Shrinder Decl., Exh. A.

ORDER – 2

Davis Decl., Exh. 3.  The City, however, ultimately acquired the 1921 Fifth Avenue property by eminent domain for the Seattle Monorail Project, leaving Davis to look for a new location for an adult entertainment cabaret.

The City's 17-year moratorium on issuing adult entertainment licenses began in November 1988 when the City council approved an initial moratorium based on citizens' concerns about the rise in topless dancing establishments from two to seven, over the course of two years.  The council adopted the initial 180-day moratorium in light of the "prostitution, disruptive conduct, and other criminal activity" it found were "increasingly associated" with adult entertainment businesses.  Olson Decl., Exh. B. at 1.  The council extended the moratorium on May 24, 1989, and broadened its reach to include adult panorams (peepshows) and adult motion picture theaters, in addition to topless dance halls, throughout Seattle.  Although the council considered legislation in December 1989 ending the moratorium and creating a new land use category for "adult cabarets," the council stopped consideration when neighborhood groups appealed the proposal, and extended the moratorium for adult cabarets only.

Since 1990, the council has extended the moratorium each year based on its failure to adopt new land use regulations governing the location of adult cabarets.  The City's reasons for the extensions vary widely from waiting for the state legislature to adopt legislation regulating adult cabarets, to waiting for King County to adopt regulations, to waiting for the City to analyze court decisions from across the country striking down or upholding adult entertainment zoning regulations, to waiting for the Executive to prepare proposed legislation.  Olson Decl., Exh. G-V.  For the last six years, the council has continued the moratorium for one-year increments, "or until new land use regulations governing the location of adult cabarets take effect, whichever is sooner."  Id., Exh. P-V.  With each extension over the past six years, the council has issued a "Work Plan and

ORDER – 3

Schedule" directing the City's Department of Planning and Development ("DPD")[3] to develop proposed land use regulations for adult cabarets.

The DPD, however, has failed each year to develop any legislative proposals regarding the location of adult cabarets. The City attributes this failure to DPD's "extreme" work overload and its shortage of experienced staff. According to the City, other competing priorities superceded DPD's development of adult entertainment legislation, including revising the City's comprehensive plan to comply with state and federal deadlines under the Washington Growth Management Act, implementing transportation initiatives, focusing on increasing economic opportunities, and "responding to unique opportunities" to protect salmon and watersheds. Ceis Decl. at ¶ 4. Nonetheless, the Mayor's office allegedly intends to present legislative proposals (prepared by DPD) ending the moratorium and regulating adult cabarets by mid-December 2005, depending on whether an environmental impact statement is required and whether an appeal is filed under the State Environmental Policy Act.[4] Id. at ¶ 7.

## III.   DISCUSSION

### A.   Legal Standard

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[3]The DPD replaced the Department of Design, Construction, and Land Use.

[4]Further, the Mayor's office recently developed new regulations governing the conduct of erotic dancers to help alleviate the likelihood of illegal conduct and thereby reduce the concerns of neighborhoods in which new adult entertainment businesses may be allowed. These proposed regulations include imposing a four-foot rule for "lap dances," increasing the lighting inside clubs, and regulating the tipping of dancers. Olson Supp. Decl., Exh. A.

ORDER – 4

judgment as a matter of law.[5]  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial responsibility, the burden shifts to the non-moving party to establish that a genuine issue as to any material fact exists.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Evidence submitted by a party opposing summary judgment is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The non-moving party cannot simply rest on its allegation without any significant probative evidence tending to support the complaint.  See U.A. Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995).  "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23.

---

[5]Although the City argues that ASF's motion for summary judgment is premature given that discovery has not yet begun, the City fails to move for a continuance under Fed. R. Civ. P. 56(f), or present affidavits establishing the specific facts it hopes to elicit.  Thus, the court rejects the City's argument without further consideration.  See Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986) ("References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f).  Rule 56(f) requires affidavits setting forth the particular facts expected from the movant's discovery.");  State of Calif. v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998) (same).

ORDER – 5

**B.      Standing**

As a threshold matter, the City argues that ASF lacks standing to bring this action because ASF failed to comply with the licensing and zoning requirements for obtaining an adult entertainment license and therefore "cannot demonstrate that but for the moratorium it would have obtained a license." Def.'s Opp'n at 2.  Based on the record and First Amendment jurisprudence, the court finds that ASF has standing to pursue a facial challenge of the moratorium.

In general, a plaintiff demonstrates that standing exists and satisfies Article III's case or controversy requirement by showing (1) an injury in fact, (2) that is traceable to the challenged action of the defendant, and (3) can be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  The plaintiff must demonstrate standing for each form of relief sought.[6]  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 191-92 (2000).  When a plaintiff challenges the government's action or inaction, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." Lujan, 504 U.S. at 561-62.

Here, ASF challenges the City's denial of its application for an adult entertainment license.  The City's license denial constitutes an injury in fact that is both actual and

---

[6]Although the City references this standing requirement, it does not argue that ASF lacks standing to seek monetary, injunctive, and declaratory relief, as alleged in the complaint.  Rather, the City focuses on whether ASF has satisfied the injury in fact and redressability requirements.  Nonetheless, the court finds that ASF has standing to seek the alleged relief.  See Young v. City of Simi Valley, 216 F.3d 807, 815 (9th Cir. 2000) (holding plaintiff had standing to challenge zoning ordinance regulating adult businesses and seek monetary relief where plaintiff applied twice for an adult use permit and was denied);  Clark v. City of Lakewood, 259 F.3d 996, 1007-08 (9th Cir. 2001) (holding plaintiff had standing to challenge an adult cabaret ordinance and seek injunctive and declaratory relief where ordinance allegedly caused plaintiff to close his adult cabaret).

ORDER – 6

concrete – without an adult entertainment license, ASF cannot lawfully operate an adult cabaret.  SMC § 6.270.040(A).  Further, the City denied ASF's license application because of the moratorium (the challenged action), and enjoining it would likely redress ASF's injury by enabling it to obtain an adult entertainment license upon a showing of eligibility.  Thus, ASF has successfully established the general standing requirements articulated in <u>Lujan</u>.

The City's argument that ASF must demonstrate its entitlement to an adult entertainment license for standing to exist, flies in the face of well-established United States Supreme Court and Ninth Circuit jurisprudence.  In the context of the First Amendment, the Supreme Court has "long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license."  <u>City of Lakewood v. Plain Dealer Publ'g Co.</u>, 486 U.S. 750, 755-56 (1988); <u>Clark v. City of Lakewood</u>, 259 F.3d 996, 1009 (9th Cir. 2001).[7]  "A licensing scheme, adult or otherwise, can vest 'unbridled discretion' in a decisionmaker where the scheme fails to place limits upon when a decisionmaker must make a determination."  <u>Clark</u>, 259 F.3d at 1009.

Based on the moratorium's long history, there can be no question that the City possesses "unbridled discretion" to issue adult entertainment licenses.  For 17 years, the City has blocked the issuance of a single adult cabaret license and effectively created a licensing scheme that fails to set limits on when the City must develop new land use

---

[7]This long line of precedent stems from the "time-tested knowledge that . . . a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship."  <u>City of Lakewood v. Plain Dealer Publ'g Co.</u>, 486 U.S. 750, 757 (1988).

ORDER – 7

regulations and resume issuing adult cabaret licenses.  Although the Mayor's office recently committed to submitting new legislative proposals regulating the location of adult cabarets, this promise rings hollow in light of the DPD's continued failure to draft such proposals and the likelihood of the proposals becoming derailed by environmental impact statements and appeals, similar to what occurred in 1989 when the council last considered new regulations.  Moreover, the City's unhampered authority to continue extending the moratorium and delaying the implementation of new regulations evidences its "unbridled discretion" to limit erotic dancing, a protected form of speech.  Thus, the court finds that ASF satisfies the general standing requirements under Lujan and the specific standing requirements of a First Amendment facial challenge.

## C.     Prior Restraint

ASF argues that the 17-year moratorium on issuing adult entertainment licenses is an unconstitutional prior restraint on free expression because it fails to provide adequate procedural safeguards.  In response, the City contends that the prior restraint analysis is inapplicable to a moratorium and alternatively, that the moratorium contains adequate procedural safeguards.  In light of the undisputed facts and First Amendment jurisprudence, the court finds that the City's 17-year moratorium is an unconstitutional prior restraint and enjoins the City from denying new applications for an adult entertainment license based on the moratorium.

The City's first argument, that the Ninth Circuit uses a "different analysis" for a licensing moratorium, lacks merit.  The only case relied on by the City for this proposition, 3570 East Foothill Blvd. v. City of Pasadena, 980 F. Supp. 329 (C.D. Cal. 1997), considered (among other things) whether the city failed to adopt a draft zoning ordinance to prevent the plaintiff from exercising its First Amendment rights to operate a topless dancing establishment.  Id. at 335-36.  No moratorium existed, and as a result, the

ORDER – 8

district court did not consider or even suggest what analysis applied in such a case.[8] Thus, the court follows the example of other district courts considering this issue, which have consistently applied a prior restraint analysis to moratoria prohibiting the issuance of adult entertainment licenses.  E.g., Howard v. City of Jacksonville, 109 F. Supp. 2d 1360, 1363 (M.D. Fla. 2000); D'Ambra v. City of Providence, 21 F. Supp. 2d 106, 111-12 (D.R.I. 1998); see also Clark, 259 F.3d at 1005 ("A licensing scheme regulating nude dancing is considered a prior restraint because the enjoyment of protected expression is contingent upon the approval of government officials.").  (Citations omitted).

A prior restraint stops protected speech before it starts.  See Southeastern Promotions Ltd. v. Conrad, 420 U.S. 546, 553 (1975) (defining a prior restraint as giving "public officials the power to deny use of a forum in advance of actual expression").  It is well settled, and the City does not dispute, that the First Amendment protects the "right to open and operate an adult theater featuring topless, exotic or nude dancing."  Young v. City of Simi Valley, 216 F.3d 807, 815 (9th Cir. 2000) (citing Schad v. Borough of Mount Ephraim, 452 U.S. 61, 65 (1981)).  Prior restraints bear a "heavy presumption" against constitutional validity because they pose a significant threat to free speech.  E.g., Freedman v. Maryland, 380 U.S. 51, 57 (1965).  To survive a constitutional challenge, an adult entertainment licensing scheme must contain at least two procedural safeguards: (1) a specified and reasonably prompt time frame to issue or deny the license, and (2) the

_____

[8]Unlike the present case, there is no allegation that the City of Pasadena banned the issuance of all new "adult business" licenses.  Rather, the plaintiff challenged the city council's failure to adopt a draft ordinance re-zoning the location of plaintiff's establishment for adult businesses, and the city's alleged failure to provide a sufficient number of permissible locations for adult businesses (i.e., more than 11 to 16 possible sites for a city of 135,000 people).  3570 East Foothill, 980 F. Supp. at 331, 342-43.

ORDER – 9

possibility of judicial review in the event the license is erroneously denied.[9]  Clark, 259 F.3d at 1005.

Here, the City argues that its current licensing scheme satisfies these procedural safeguards because the City's licensing department denied ASF's license application within 24 days of receiving it, and ASF could have sought judicial review in state court. Yet the fact that the City denied ASF's application within an arguably reasonable time frame does not change the fact that the licensing scheme itself fails to provide a specified time frame for issuing or denying an adult premises license.[10]  Under the current licensing scheme, the Director of the Department of Executive Administration (the "Director") "shall issue" an adult entertainment license if the Director finds that the proposed business complies with "the applicable health, zoning, building, fire and safety laws of the State, the ordinances of the City, as well as the requirements of this chapter." SMC § 6.270.090(A)(1).

Nowhere in the adult entertainment licensing regulations, or in the general business licensing regulations provided to the court, does the City specify a time period for granting or denying a license.  "[A] prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible."  FW/PBS, Inc. v. City of Dallas, 493 U.S. 214, 226 (1990) (plurality).  In FW/PBS, the Supreme Court

---

[9]The Supreme Court established these two procedural safeguards in Freedman v. Maryland, 380 U.S. 51, 58-59 (1965).  The third procedural safeguard established by the Court in Freedman, requiring the licensor to bear the burden of going to court and justifying the license denial, was later dispensed with by Justice O'Connor's plurality opinion in FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 223-24 (1990) (plurality).

[10]The court notes that the Ninth Circuit has held that a 21-day delay in receiving an adult cabaret manager license violates the Washington Constitution.  Clark, 259 F.3d at 1016 (citing Ino, Ino, Inc. v. City of Bellevue, 937 P.2d 154 (Wash. 1997) (holding 14-day waiting period for managers violated Washington Constitution)).

ORDER – 10

held that a licensing ordinance regulating sexually oriented businesses, including adult cabarets, lacked adequate procedural safeguards where it failed to set a time limit for the required building, health, and fire inspections to occur.  <u>Id</u>. at 227.  The Court noted that a licensing scheme that fails to provide a specific time limit for issuing the license is "constitutionally unsound" because it "creates the risk of indefinitely suppressing permissible speech."  <u>Id</u>. at 226-27.

In this case, the City not only fails to provide a specified time for rendering a licensing decision in its adult entertainment regulations, but it goes a step further in suppressing protected speech and prohibiting any new adult cabarets from opening.  As a result of the moratorium, no new adult cabarets have opened in Seattle for 17 years.  The other district courts that have considered similar moratoria on issuing adult cabaret licenses have held that significantly smaller time periods preventing the opening of new adult cabarets are unconstitutional.  <u>Howard</u>, 109 F. Supp. 2d at 1364 (holding 120-day moratorium on issuing adult cabaret licenses coupled with 45-day review period is unconstitutional); <u>D'Ambra</u>, 21 F. Supp. 2d at 113 (holding 18-month moratorium on issuing adult cabaret licenses is unconstitutional).  The City's attempt to distinguish these cases is unavailing.[11]

---

[11]The City argues that <u>D'Ambra</u> is distinguishable because the city's licensing board enacted the moratorium in that case without issuing any prior notices or announcements of the new policy, unlike the City here which adopted and extended the moratorium each year by formal council ordinance for alleged "[l]egitimate, non-censorship reasons."  Def.'s Opp'n at 21.  This proposed distinction carries little weight given that the district court in <u>D'Ambra</u> did not base its finding of unconstitutionality on the process or reasons for enacting the moratorium, but rather on the licensing board's failure to limit "the time within which the Board must make a decision."  21 F. Supp. 2d at 112.  Additionally, the City's attempt to discredit the court's holding in <u>Howard</u> by contending that "the court chose the wrong measuring tool" for evaluating the 120-day moratorium lacks merit.  Def.'s Opp'n at 22.

ORDER – 11

Similarly, the court is unpersuaded by the City's attempt to justify 17 years of delay by arguing that "adult dancing is alive and well" in Seattle and that its failure to adopt new legislation "was due to legitimate reasons other than censorship."  Def.'s Opp'n at 24.  The fact that Seattle has continued to issue adult entertainer licenses to *erotic dancers* over the last 17 years does not excuse the City's failure to provide "essential" procedural safeguards for licensing new *adult cabarets* where the protected speech occurs.  See FW/PBS, 493 U.S. at 228; D'Ambra, 21 F. Supp. 2d at 113-14 (finding the city's argument that the moratorium is narrowly tailored because it is temporary and only affects new license applicants "specious").  The City is not permitted to selectively uphold the First Amendment.  Further, even assuming the City has blocked the issuance of new adult cabaret licenses for legitimate, non-censorship reasons over the last 17 years, the City's intent and motive for violating the Constitution are of no consequence.  Plain Dealer, 486 U.S. at 770 (refusing to presume city's reasons for denying permit applications are motivated by good faith).  The City fails to provide any authority, nor is the court aware of any authority, suggesting that the government's reasons for suppressing constitutionally protected speech has any bearing on the prior restraint analysis.  "Just as nude dancing can create secondary effects of crime and deterioration, even well-intentioned laws are deleterious if they violate the Constitution." D'Ambra, 21 F. Supp. 2d 106.

Thus, the court finds that the City's current licensing scheme is unconstitutional because it fails to provide adequate procedural safeguards by failing to specify a reasonable time frame for issuing a licensing decision and by enacting a 17-year

moratorium on issuing new adult entertainment licenses.[12]  As a result, the court enjoins

the City from denying new applications for an adult entertainment license based on the

moratorium, and finds that ASF is entitled to an adult entertainment license provided it

submits the appropriate license applications, obtains the proper zoning permit, and

otherwise complies with the current licensing regulations.

### IV.   CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff's motion for partial

summary judgment (Dkt. # 7).

Dated this 12th day of September, 2005.

JAMES L. ROBART
United States District Judge

---

[12]Because the City's licensing scheme lacks adequate procedural safeguards, the court need not address whether the moratorium violates due process or is a content-neutral time, place, and manner restriction.  FW/PBS, 493 U.S. at 223.

ORDER – 13